**Marsha CASTETTER, Appellant,**

v.

**Mr. "B" STORAGE, Appellee.**

Superior Court of Pennsylvania.

Argued April 9, 1997.
Filed Aug. 22, 1997.

Garry E. Wamser, Bloomsburg, for appellant.

George O. Wagner, Danville, for appellee.

Before BECK, SAYLOR and MONTEMURO*, JJ.

SAYLOR, Judge.

Marsha Castetter (Appellant) has appealed from a judgment entered in favor of Mr. "B" Storage (Appellee) following a non-jury trial in the Montour County Court of Common Pleas. We reverse.

A review of the record reveals the following facts. Appellee, which is owned and operated by the Bebenek family, is a self-storage facility located in Danville, Pennsylvania. On February 21, 1994, Appellant executed a written contract with Appellee for the rental of a self-storage unit. The contract provided that in the event of a default in rental payments, Appellee was entitled, after giving proper notice, to sell Appellant's property in order to satisfy unpaid rent.

When she rented the storage unit from Appellee, Appellant was in the process of separating from her husband. With the help of her father and grandfather, Appellant moved all of her personal property out of her marital residence, a five bedroom house, and into the leased storage unit. Once all of her belongings, valued at $1,838.00, had been placed in the storage unit, Appellant secured the unit with a lock given to her by her grandfather. She kept a key for her own use and gave a key to each of her parents.

One month later, at Appellant's request, her father, Calvin Wetzel, Jr., placed her car, a Mercury Sable, in the storage unit. He used the key which Appellant had given him to open the unit. At that time, the bank loan on Appellant's vehicle was in default.

Thereafter, on May 24, 1994, Appellant received a written notice from Appellee, which informed her that she owed $162.80 in

* Retired Justice assigned to Superior Court.

rental and late fees for the storage unit. The notice did not state that Appellee planned to sell or otherwise dispose of Appellant's property nor that it had a lien on such property. This was the only written notice Appellant ever received from Appellee. After an unsuccessful attempt to reach Appellant by phone at her parent's residence, Appellee put a second lock on the storage unit in order to restrict Appellant's access to the leased space, pending payment of her past due rent. Appellant was never informed that a second lock had been placed on the unit.

Sometime later, a collection manager from Montour Bank, John Liash, who was seeking to repossess Appellant's vehicle, asked for Appellee's permission to verify that the car was located in the storage unit; such permission was given without Appellant's knowledge or consent. Mr. Bebenek opened the second lock which had been placed on the storage unit as the result of Appellant's delinquency in rent. The record is unclear as to whether or not Appellant's lock was on the unit at that time, and if so, how it was opened.

Mr. Liash verified that Appellant's car was in the leased space and was advised by Appellee that Appellant's delinquency in rent had to be paid in full before the bank would be permitted to remove the vehicle from the storage unit. The bank paid Appellant's storage bill and the car was repossessed. At that time, all of Appellant's personal possessions were still in the unit. No one who was present during the car's repossession could recollect whether or not the unit was secured after the repossession.

Thereafter, Appellant and her mother were driving on a public road past Appellee's storage facility when they happened to notice that the door on Appellant's storage unit was ajar. Upon further investigation, they realized that the unit had been left unlocked, and all of Appellant's personal property, including sentimental items such as her high school yearbooks and her children's toys, had been taken out of the unit. The space which Appellant had leased from Appellee was "completely empty."

Immediately, Appellant contacted Appellee to inquire as to the whereabouts of her belongings. Appellant claims that she was told, by an employee of Appellee, that "the workers ... cut the lock and took [her property]." Appellee denies having any knowledge regarding the fate of Appellant's property.

Appellant filed a complaint on October 20, 1994, seeking actual damages in the amount of $1,838.00, and punitive damages in the amount of $5,514.00. A non-jury trial was held on October 18, 1996. A verdict was rendered in favor of Appellee. Following the denial of post-trial motions, Appellant filed this appeal.

On appeal, Appellant contends that the trial court erred in entering judgment in Appellee's favor because Appellee failed to comply with the Self Service Storage Facility Act, ("the Act"), 73 P.S. § 1901, *et seq.* Appellant further claims that, in addition to an award of actual damages, she is also entitled to punitive damages based on the circumstances surrounding the loss of her property. Our review is guided by the following standard:

> The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law; findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion.

*Olmo v. Matos,* 439 Pa.Super. 1, 5–6, 653 A.2d 1, 2 (1994), *alloc. denied,* 541 Pa. 652, 664 A.2d 542 (1995).

Section 1904 of the Act provides, in pertinent part, that "[t]he owner of a self-service storage facility ... shall have a lien upon all personal property, while located in a self-service storage facility, for rent ... incurred for storing said property, and for expenses necessary for its preservation or expenses reasonably incurred in its sale or other disposition ..."

Moreover, the Act states that if the occupant defaults in the payment of rent, "[t]he owner *shall* give written notice of the default and any other action taken in regard to the occupant's property, to the occupant by per-

sonal service or certified mail, return receipt requested, sent to the occupant's last known address." 73 P.S. § 1906(a)(emphasis added).

Such notice *shall* contain all of the following elements:

(1) An itemized statement of the owner's claim showing the sum due at the time of the notice and the date when the sum became due.

(2) A demand for payment of the sum due within a specified time not less than 30 days after the date of notice.

(3) A statement that the contents of the occupant's lease space are subject to the owner's lien.

(4) The name, street address and telephone number of the owner or his designated agent who the occupant may contact to respond to the notice.

(5) A conspicuous statement in bold print that unless the claim is paid within the time and at the place stated, the personal property will be advertised for sale or will be otherwise disposed of at a specified time and place, not less than 30 days after the date of the notice.

73 P.S. § 1906(b).

Further, the Act provides that "[i]f the owner elects to deny the occupant access to the leased space or elects to enter and/or remove the occupant's personal property from the leased space to other suitable storage space, a statement so advising the occupant *shall* be included in the notice." 73 P.S. § 1906(c)(emphasis added).

■ As noted in the historical and statutory notes section of 73 P.S. § 1901 *et seq.,* the purpose of the legislature in enacting the Self Storage Facility Act was to "... provid[e] a simple but fair procedure for the enforcement of rights in the event of default by providing a lien on all personal property stored at [self service] facilities in favor of the owners thereof." Because the Act affects the personal property rights of a storage facility occupant, the provisions of the Act which delineate the duties, obligations and notice requirements imposed upon a facility owner when taking action against such property must be strictly construed to ensure that the occupant's property rights are adequately protected.

■ Here, it is undisputed that only one written notice was sent to Appellant regarding her delinquency in rent. Such notice failed to include several essential elements, as required by § 1906. Most importantly, Appellant was not notified that her belongings were subject to an owner's lien nor that her access to the leased space had been restricted by the installation of a second lock on the unit's door.

Finally, § 1903 of the Act provides that in the event of a sudden, unexpected circumstance which demands immediate action, an owner may enter the leased space without notice to or the consent of an occupant, but otherwise, access to the owner shall be provided by the occupant upon owner's reasonable request.

■ In this case, it is undisputed that Appellee did not give Appellant notice of, nor seek consent for, Mr. Liash's entry into the storage unit. This is a clear violation of § 1903 of the Act. Finally, Appellee made no effort whatsoever to secure the personal possessions of Appellant which remained in the storage unit after the car had been repossessed. Such conduct can only be characterized as negligence, rendering Appellee liable for the loss of Appellant's property under § 1914 of the Act.

Because Appellee failed to comply with *several* mandatory provisions of the Self–Service Storage Facility Act, we conclude that the trial court erred in awarding judgment in its favor. Appellant is entitled to judgment notwithstanding the verdict on her claim for compensatory damages.

■ Next, Appellant claims that she is entitled to punitive damages based on Appellee's conduct with regard to her personal property. Punitive damages are only awarded to punish a defendant for intentional, willful, wanton or reckless conduct. *SHV Coal v. Continental Grain Co.,* 526 Pa. 489, 493, 587 A.2d 702, 704 (1991). Further:

It is well settled that punitive damages will lie only in cases of outrageous behavior, where defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. Neither mere negligence, nor even gross neg-

ligence, shows sufficient culpability to justify a punitive damage award.

*Takes v. Metropolitan Edison Co.,* 440 Pa.Super. 101, 116–117, 655 A.2d 138, 144 (1995) (citations omitted).

Here, the evidence presented at trial does not establish that Appellee's actions were of such a nature as to be considered "outrageous." Therefore, Appellant is not entitled to punitive damages in this case.

In accordance with the foregoing, we reverse the judgment rendered in favor of Appellee, and remand this case to the trial court with instructions to enter judgment in favor of Appellant in the amount of $1,838.00. Jurisdiction is relinquished.