**Fasula v. Hijazi**

C.P. of Lackawanna County, no. 99-CV-738.

*Paul J. Drucker* and *Michael J. Donohue,* for plaintiff.

*David W. Saba* and *Lara J. Endler,* for defendant Hijazi.

*Michael P. Perry,* for defendant Community Medical Center.

NEALON, *J.,* August 20, 1999—Defendant, Saadeddine Hijazi M.D., has filed preliminary objections seeking to strike certain allegations contained in the complaint which has been filed in this medical negligence action. For the reasons set forth below, the preliminary objections will be granted to the extent that they seek to strike averments of "recklessness" in paragraphs 14, 16, 24 and 28, and a separate claim for loss of consortium in Count III of the complaint, but will be denied in all other respects.

## I. FACTUAL BACKGROUND

According to the allegations of the complaint, the decedent, Neal Fasula, was admitted to defendant Com-

munity Medical Center on February 19, 1997, where he underwent a laparoscopic cholecystectomy that was performed by Dr. Hijazi. (See plaintiff's complaint, ¶¶7-8.) The decedent experienced arterial oxygen saturation postoperatively and on February 20, 1997, he suffered a cardiac pulmonary arrest and died while still hospitalized at the CMC. (*Id.,* ¶¶10-11.) On March 7, 1997, the decedent's wife, plaintiff, Joyce A. Fasula, was appointed the executrix of her husband's estate by the register of wills of Lackawanna County. (*Id.,* ¶12.)

On February 12, 1999, Fasula commenced the above-captioned medical malpractice action by the filing of a writ of summons naming Dr. Hijazi and CMC as defendants. After the CMC filed a rule to file a complaint on February 22, 1999, Fasula filed a complaint against Dr. Hijazi and CMC on March 3, 1999. In paragraphs 14, 16, 24 and 28 of the complaint, Fasula alleges than Dr. Hijazi engaged in "carelessness, negligence and recklessness." Specifically, Fasula contends that Dr. Hijazi's wrongful conduct consisted of the following:

"(a) failing to bring to bear the medical skills which he would have possessed in the diagnosis and treatment of decedent Neal Fasula;

"(b) failing to conform to the standard of care required of the physician of the defendant's stature and licensing as a competent and skill (sic) surgeon holding himself as an individual as specialized in the field of general surgery;

"(c) failing to properly perform procedures which reasonable persons of his professional stature would have performed properly;

"(d) failing to conform to, offer to and render to the plaintiff medical care of a reasonable standard as required of a person of his professional status under the circumstance;

"(e) failing to use the ordinary skill and diligence and to apply the methods as ordinarily and customarily used in similar circumstances by competent physicians specializing in general surgery;

"(f) failing to conform to the requisite standards of reasonable medical care;

"(g) failing to properly administer the appropriate precautionary procedures prior to and during the operation of decedent Mr. Fasula to guard against and help prevent the occurrence of a pulmonary embolism." (*Id.,* ¶¶14(a)-(g).)

In Count I of the complaint, Fasula asserts a cause of action under the Wrongful Death Act, 42 Pa.C.S. §8301, seeking damages on behalf of the decedent's survivors, including herself, for the loss of the decedent's "comfort, aid, assistance, society, tutelage and maintenance." (*Id.,* ¶20.) Fasula has advanced a separate claim in Count II of the complaint to recover damages on behalf of the decedent's estate pursuant to the Pennsylvania Survival Act, 42 Pa.C.S. §8302. (*Id.,* ¶¶22-25.) In addition, Count III of the complaint alleges a separate cause of action for "the loss of consortium, comfort, aid, assistance, society, tutelage and maintenance" that Fasula would have received from her husband if he had not died. (*Id.,* ¶28.)

On April 9, 1999, CMC filed an answer and new matter to the complaint. However, on March 31, 1999, Dr. Hijazi filed the instant preliminary objections raising three arguments. First, since Fasula seeks to recover for the loss of the decedent's comfort, society and services

in her wrongful death claim under Count I, Dr. Hijazi demurs to Fasula's attempt to assert a separate loss of consortium claim in Count III on the grounds that it duplicates the damages sought in Count I. Second, Dr. Hijazi preliminarily objects to the bald allegations of "recklessness" to the extent that Fasula may subsequently seek to amend the complaint to include a claim for punitive damages based upon her earlier averment of recklessness. Last, relying upon the frequently cited footnote in *Connor v. Allegheny General Hospital,* 501 Pa. 306, 311 n.3, 461 A.2d 600, 602 n.3 (1983), Dr. Hijazi seeks to strike what he submits are overly broad allegations of negligence in subparagraphs (a) through (f) of paragraph 14 of the complaint.

Dr. Hijazi filed his supporting memoranda of law on March 31, 1999, and Fasula submitted an opposing brief on April 22, 1999. CMC has not asserted any position with respect to the pending preliminary objections. Following the completion of oral argument on August 19, 1999, this matter became ripe for disposition.

## II. DISCUSSION

### (A) *Standard of Review*

In ruling upon preliminary objections in the nature of a demurrer, the trial court must accept as true all well-pleaded facts and all inferences reasonably deducible therefrom. *Hugi v. Horn,* 730 A.2d 1042, 1044 (Pa. Commw. 1999); *Myers v. Ridge,* 712 A.2d 791, 794 (Pa. Commw. 1998). The issues raised by preliminary objections must be resolved "solely on the basis of the pleadings; no testimony or other evidence outside of the com-

plaint may be considered to dispose of the legal issues presented by a demurrer." *Bailey v. Storlazzi,* 729 A.2d 1206, 1211 (Pa. Super. 1999); *Hull v. Rose, Schmidt, Hasley & DiSalle,* 700 A.2d 996, 998-99 (Pa. Super. 1997). A demurrer should be granted "only when, under the facts alleged, the law states with certainty that no recovery is possible." *Deputy Sheriff's Association v. County of Allegheny,* 730 A.2d 1065, 1067 (Pa. Commw. 1999). Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Shick v. Shirey,* 552 Pa. 590, 594, 716 A.2d 1231, 1233 (1998); *Aveline v. Board of Probation and Parole,* 729 A.2d 1254, 1256 n.6 (Pa. Commw. 1999).

## (B) *Loss of Consortium Claim*

In paragraph 20 of Count I of the complaint, Fasula avers that the decedent's "survivors have been deprived of the comfort, aid, assistance, society, tutelage and main-tenance they would have received from him during the remainder of his natural life." Similarly, in paragraph 28 of Count III, Fasula maintains that she "has been de-prived of the loss of consortium, comfort, aid, assistance, society, tutelage and maintenance that she would have received from her husband during his lifetime and fol-lowing his death said loss which will remain (sic) her natural life." Dr. Hijazi objects to Count III on the basis that it seeks to duplicate those damages which have al-ready been alleged under the Wrongful Death Act via paragraph 20 of the complaint.

Wrongful death damages serve to compensate the spouse, children or parents of a deceased for pecuniary

loss that they have sustained as a result of the death of the decedent. *Tulewicz v. SEPTA,* 529 Pa. 588, 597, 606 A.2d 427, 431 (1992); *Moyer v. Rubright,* 438 Pa. Super. 154, 159, 651 A.2d 1139, 1141 (1994), *appeal denied,* 540 Pa. 649, 659 A.2d 988 (1995). The damages recoverable in a wrongful death action include the value of the services the deceased would have rendered to the family had [s]he lived, as well as medical, funeral, burial and estate administration expenses necessitated by reason of the death. *Kiser v. Schulte,* 538 Pa. 219, 226, 648 A.2d 1, 4 (1994); *Burkett v. George,* 118 Pa. Commw. 543, 546, 545 A.2d 985, 987 (1988).

In contrast, a survival action is brought by the administrator of the decedent's estate to recover on behalf of the estate for the personal injuries and consequent damages suffered by the decedent. *Tulewicz,* 529 Pa. at 597, 606 A.2d at 431; *Prevish v. Northwest Medical Center—Oil City Campus,* 692 A.2d 192, 199 (Pa. Super. 1997). The measure of damages under the Survival Act include the decedent's conscious pain and suffering from the moment of injury to the time of death and the loss of the decedent's earning potential, less any applicable personal maintenance expense, from the time of death through the decedent's estimated working life span. *Kiser,* 538 Pa. at 226-27, 648 A.2d at 4; *Slaseman v. Meyers,* 309 Pa. Super. 537, 544-45, 455 A.2d 1213, 1217 (1983).

As the Supreme Court of Pennsylvania has previously noted, wrongful death and survival actions "are designed to compensate two different categories of claimants: the spouse and/or members of the decedent's family for wrongful death of the decedent, and the decedent [him]

herself through the legal person of [his] her estate." *Kiser, supra* at 227, 648 A.2d at 4; *Tulewicz,* 529 Pa. at 597, 606 A.2d at 431. Moreover, "the actions for damages are cumulative and are not to overlap or result in duplication of damages." *Id.* (citing *Pezulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942)).

For that reason, a surviving spouse may not pursue a distinct claim for loss of consortium since those damages are recoverable in her wrongful death action. *Linebaugh v. Lehr,* 351 Pa. Super. 135, 139, 505 A.2d 303, 305 (1996) ("[w]e hold, therefore, that a surviving spouse cannot maintain a separate cause of action for loss of consortium resulting from the death of a spouse but must instead recover damages for loss of the deceased spouse's society in an action for wrongful death."); *Mease v. Pennsylvania State Police,* 145 Pa. Commw. 407, 412-13, 603 A.2d 679, 682 (1992) ("[plaintiff] brought both a wrongful death and a survival action. The recovery she seeks for loss of consortium will be provided in any damages she may recover in the wrongful death action."). Thus, inasmuch as Fasula may recover for loss of the decedent's consortium by virtue of paragraph 20 of the complaint, Dr. Hijazi's preliminary objections to Count III will be granted.

### (C) *Recklessness Allegations*

Fasula's complaint contains factual averments which allege nothing more than mere negligence or carelessness on the part of Dr. Hijazi and CMC. Although Fasula does not request punitive or exemplary damages in the complaint, she has employed the term "recklessness" in

four separate paragraphs of the complaint in referencing the conduct of Dr. Hijazi. At the time of oral argument, counsel for Fasula represented that the reference to "reck-lessness" was included in the complaint in order to enable Fasula to amend her pleading following the completion of discovery to assert a claim for punitive damages, if warranted.

Pursuant to section 1301.812-A(a) of the Health Care Services Malpractice Act, 40 P.S., punitive damages may be awarded "for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others." However, in the context of a medical negligence claim, "[a] showing of gross negligence is insufficient to support an award of punitive damages." 40 P.S. §1301.812-A(b). Accord *SHV Coal Inc. v. Continental Grain Co.,* 526 Pa. 489, 495, 587 A.2d 702, 705 (1991) (neither negligence nor gross negligence establishes sufficient culpability to justify a punitive damage award); *Castetter v. Mr. B Storage,* 699 A.2d 1268, 1271-72 (Pa. Super. 1997) (same). In the present matter, Fasula has not advanced a claim for punitive damages and the statute of limitations applicable to her causes of action under the Wrongful Death Act and the Survival Act would have expired two years after the decedent's death on February 20, 1997. See *Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 524, 526 A.2d 323, 327 (1987) (the statute of limitations governing a survival claim begins to run no later than the date of death); *Baumgart v. Keene Building Products Corp.,* 430 Pa. Super. 162, 172, 633 A.2d 1189, 1194 (1993), *aff'd,* 542 Pa. 194, 666 A.2d 238 (1995) (an action for the wrongful death of another must be brought no later than two

years after the date of death). See also, *Krevitz v. City of Philadelphia,* 167 Pa. Commw. 412, 422, 648 A.2d 353, 358 (1994) (discovery rule cannot be employed to extend the time for filing a wrongful death and survival action beyond the two year statute of limitations).

Fasula's complaint does not contain a factual predicate which would support an allegation of recklessness, nor does it include a specific demand for punitive damages. Contrary to Fasula's contention, a punitive damage claim is not merely derivative of her original negligence claim. *Romah v. Hygienic Sanitation Co.,* 705 A.2d 841, 861 n.9 (Pa. Super. 1997). If the averments of the initial complaint simply allege ordinary negligence, a plaintiff may not later seek to amend the complaint to aver reckless conduct and seek the recovery of punitive damages. *Willett v. Evergreen Homes Inc.,* 407 Pa. Super. 141, 150, 595 A.2d 164, 168-69 (1991). Since the two year statute of limitations applicable to Fasula's claim for punitive damages lapsed on February 20, 1999, she may not amend her complaint at the conclusion of discovery to demand punitive damages. Consequently, the unsubstantiated allegations of "recklessness" in the complaint are impertinent, superfluous and inappropriate and will be stricken from paragraphs 14, 16, 24 and 28 of the complaint.

### (D) *General Negligence Averments*

Dr. Hijazi also seeks to strike subparagraphs (a) through (f) of paragraph 14 of the complaint on the grounds that those averments are overly broad. Relying upon former Justice Larsen's footnote in *Connor,* Dr. Hijazi opines that "the burden is placed on the defendant

to preliminarily object to such boilerplate language in order to prevent the plaintiff from asserting new theories of negligence or other claims beyond the running of the statute of limitations." (See defendant's brief, p. 7.)

In *Connor,* the Supreme Court of Pennsylvania permitted a plaintiff to amend the complaint to include a new cause of action by virtue of the fact that the original pleading contained an averment that the defendant had "otherwise fail[ed] to use due care and caution under the circumstances." *Id.,* 501 Pa. at 311 n.3, 461 A.2d at 602 n.3. Several trial courts interpreted *Connor* as compelling defendants to seek the dismissal of unduly broad allegations in order to immunize themselves from belated amendments asserting potentially new causes of action. See *e.g., Farmer v. Rhoads,* 43 D.&C.3d 393, 397 (Chester Cty. 1986) (granting preliminary objections based upon *Connor* since "[i]t would be unjust to require defendants in this case to prepare and defend against every possible cause of action that might fall within the ambit, of failing to exercise proper skill under the circumstances."); *Lichty v. Kucharczuk,* 5 D.&C.4th 120, 126 (Northampton Cty. 1989) ("[t]he *Connor* case makes clear that a defendant seeking protection from amendments representing a significant change in theory after the statute of limitations must purge the complaint of generalized averments as in the instant case."); *Badowski v. Acme Markets,* 80 Luz. Leg. Reg. 44, 46 (1990) ("[t]he apparent holding of *Connor* is that where there is a boilerplate averment of negligence contained in the complaint, the complaint can be amended to include *any* theory of negligence after such time that, without the boilerplate language, the amendment would be barred

by the statute of limitations."); *Rockmaker v. Ruht,* 47 Lehigh L.J. 166, 167 (1996) ("[o]ne might argue that there is no footnote in the history of Pennsylvania jurisprudence that has caused more difficulty, and produced more preliminary objections, than Justice Larsen's footnote in *Connor.*").

In *Johnson v. Patel,* 19 D.&C.4th 305 (Lacka. Cty. 1993), Senior Judge S. John Cottone crafted a more equitable application of *Connor* by affording the plaintiff 120 days within which to conduct discovery so as to articulate more specific averments of negligence, with the proviso that any general allegations would be stricken if the complaint was not so amended within 60 days of the completion of that discovery. *Id.* at 311. This court has previously followed the sound procedure fashioned by Judge Cottone. See *e.g., Shumek v. Scranton Counseling Center,* 100 Lacka. Jur. 173, 177-78 (1999).

The Superior Court of Pennsylvania laid this recurring issue to rest by subsequently holding that *Connor's* footnote does not require defendants to preliminarily object to general averments for the reasons claimed by Dr. Hijazi. In *American States Insurance Co. v. State Auto Insurance Co.,* 721 A.2d 56 (Pa. Super. 1998), the plaintiff's contentions were "merely conclusory and the complaint include[d] no specific allegations of facts of the [defendant's] independent negligence." *Id.* at 61. (footnote omitted) In rejecting the defendant's proffered interpretation of *Connor,* the Superior Court concluded:

"[Defendant] claim[ed] that, in *Connor,* 'the Supreme Court put the burden on defendants to preliminarily object to averments that were unspecific and the *failure to object would result in the allowance of any theory of*

*recovery cognizable within the general averment.'* . . . This is an erroneous reading of *Connor.* The only reference to objecting to allegations is in footnote three. Footnote three makes it clear that if a defendant does not understand what an allegation means, it could file preliminary objections and move for a more specific pleading or move to strike that portion of the complaint. The court went on to state that 'the [plaintiff's statement] may not be a statement in a concise and summary form of the material facts upon which the plaintiff relied . . . [and, in that case,] a defendant may move to strike out an insufficient statement, or, if it is too indefinite, may obtain a rule for one more specific. *Failing to do either, he will not be entitled to a compulsory nonsuit because of the general character of plaintiff's statement.'* [*Connor v. Allegheny General Hospital,* 461 A.2d 600] at 602 n.3. . . . This does not stand for the assertion [defendant] makes in this regard." *Id.* at 61 n.2. (citation omitted) (emphasis in original)

Hence, according to the most recent appellate pronouncement, *Connor* simply states that a defendant may not obtain a compulsory nonsuit if the defendant does not request a more specific pleading; however, *Connor* does not obligate a defendant to preemptively object to general averments in order to safeguard against untimely amendments. In either event, Dr. Hijazi's concerns with respect to paragraph 14 of the complaint can be adequately addressed by the approach formulated in *Johnson v. Patel.* An appropriate order will follow.

## ORDER

And now, August 20, 1999, upon consideration of the preliminary objections of the defendant, Saadeddine

Hijazi M.D., the memoranda of law submitted by the parties and the oral argument of counsel, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) The preliminary objections to Count III of the complaint are granted and paragraphs 26 through 28 of the complaint are stricken;

(2) The preliminary objections to the averments of "recklessness" in paragraphs 14, 16, 24 and 28 of the complaint are granted and any reference to "recklessness" in those paragraphs is stricken;

(3) With regard to the allegations of paragraphs 14(a)-(f) of the complaint, plaintiff will be afforded 120 days from the date of this order within which to conduct discovery so as to enable plaintiff to prepare and file a more specific pleading within 60 days of the completion of such discovery; and

(4) If the plaintiff fails to so amend paragraphs 14(a)-(f) of the complaint within 180 days of the date of this order, the objectionable portions of paragraphs 14(a)-(f) will be deemed stricken.