AMERICAN STATES INSURANCE COMPANY, a Corporation, Appellant,

v.

STATE AUTO INSURANCE COMPANY, Pennsylvania Insurance Guaranty Association, American Mining Insurance Company, Motorists Mutual Insurance Company, Maryland Casualty Insurance Company, R.G. McIntire Coal Company, Inc., Di–Mac Enterprises, Incorporated, Just, Inc., Ronald G. McIntire, Helen McIntire, Veronica Heny, Michael Heny, Jean L. Frailey, Robert L. Frailey, and Glenn Kimmel, Appellees.

STATE AUTO INSURANCE COMPANY, Appellee,

v.

Veronica HENY, Michael Heny, Jean L. Frailey, Robert Frailey, Glenn Kimmel, R.G. McIntire Coal Company, Inc., Ronald McIntire, Helen L. McIntire, Just, Inc., and Di–Mac Enterprises, Inc., Appellees,

v.

AMERICAN STATES INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 8, 1998.
Filed Nov. 17, 1998.

Daniel P. McDyer, Pittsburgh, for American States, appellant.

Robert A. Loch, Pittsburgh, for State Auto, appellee.

James W. Kraus, Pittsburgh, for Pennsylvania Ins., appellee.

Before EAKIN, SCHILLER and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

This is an appeal of two orders resulting from summary judgment motions in consolidated declaratory judgment actions. The undisputed facts that gave rise to the declaratory judgment actions are as follows. On December 18, 1992, Veronica Heny, Michael Heny, Jean Frailey, and Robert Frailey filed a complaint in civil action in Armstrong County under Docket No. 1992–0466–Civil against Glenn Kimmel; R.G. McIntire Coal Company, Inc.; Ronald and Helen McIntire; Just, Inc.; and Di–Mac Enterprises, Inc. The complaint alleged that an automobile accident occurred on April 3, 1990, on Route 422 in Plum Creek Township, Armstrong County. At that time, plaintiff Veronica Heny was operating a motor vehicle travelling east on 422 with Jean Fraily as her passenger. Defendant Glenn Kimmel was operating his motor vehicle and travelling west on 422. Defendant Kimmel attempted to make a left hand turn into the driveway of the McIntire Coal Company and a collision occurred between his vehicle and Ms. Heny's vehicle. Both occupants of the Heny vehicle were seriously injured.

The underlying complaint alleged that defendant Glenn Kimmel was the agent, servant or employee of defendants Ronald and Helen McIntire, R.G. McIntire Coal Company, Inc., and the other corporate entities. The complaint also alleged that Ronald and Helen McIntire were directly negligent in causing the accident.

At the time of the accident the McIntires were insureds under liability insurance policies issued by four different companies. The policies included an umbrella insurance policy issued by American States Insurance Company (American States), a personal motor vehicle insurance policy issued by State Auto Insurance Company (State Auto), a farmowners' insurance policy issued by Highland Mutual Insurance Company (Highland), and a commercial motor vehicle insurance policy issued by Motorists Mutual Insurance Company (Motorists). Subsequent to the accident, Highland became insolvent and the Pennsylvania Insurance Guaranty Association (PIGA) was substituted in its place.

State Auto, PIGA, and Motorists declined to accept defense of the McIntires. As a result, American States eventually assigned defense counsel for the McIntires. On August 5, 1993, State Auto filed a declaratory judgment action in Armstrong County seeking a declaration that it had no duty to defend or indemnify. Both PIGA and Motorists took no action. American States filed a declaratory action in Allegheny County on March 30, 1994, seeking a declaration that it was the McIntires' excess insurance carrier and that the primary insurance carriers had a duty to defend before such duty arose on the part of American States. American States also sought a declaration that because the primary insurance carriers failed to defend the McIntires despite an alleged duty to do so it should be reimbursed for its defense costs. Lastly, American States sought a declaration that if a judgment was rendered against the McIntires in the underlying tort action, the burden of indemnifying the McIntires should fall on the primary insurance carriers before falling on American States.

Procedurally, American States intervened into the State Auto declaratory judgment action and the declaratory judgment action of American States was transferred to Armstrong County. These two actions were consolidated on September 28, 1995. On November 29, 1995, the plaintiffs in the underlying tort action filed a praecipe to settle and discontinue their tort action pursuant to settlement. American States paid $375,000 toward the settlement of the tort action.

Following settlement, American States filed motions for summary judgment against State Auto and PIGA seeking a declaration as a matter of law that they had breached their obligation to defend and requesting that they be directed to reimburse American States for the full amount of its settlement contribution. State Auto, PIGA, and Motorists all filed motions for summary judgment seeking a declaration as a matter of law that each had no duty to defend and no duty to reimburse American States.

In an opinion and order dated October 18, 1996, the Honorable Kenneth G. Valesek of the Armstrong County Court of Common Pleas held that State Auto had no duty to

defend under the terms of the personal auto insurance policy issued to the McIntires and, therefore, no duty to reimburse American States. PIGA was found to have had a duty to defend under Highland's insurance policy. PIGA was found to have no duty to reimburse American States, however, pursuant to the provisions of the Pennsylvania Insurance Guaranty Association Act[1] that exclude claims for subrogation by insurers. Finally, Judge Valesek found that Motorists had a duty to defend.

Subsequent summary judgment motions were filed by American States and Motorists to determine if Motorists had a duty to indemnify American States for the money it paid in settling the underlying tort action. These motions resulted in an order dated January 21, 1998. Motorists was found to be liable for half of American States' defense costs because it had a duty to defend under its policy. Motorists was not found, however, to have a duty to indemnify American States for the settlement monies paid because it was determined that the underlying claim was not covered under Motorists' policy. American States appeals from these orders of October 18, 1996, and January 21, 1998.

American States presents the following issues for our review:

Whether a policy phrase, "for the ownership, maintenance, or use" (State Auto policy), that this Court had already found ambiguous, remains ambiguous?

Whether an insurance company that breaches its contract with its insured by failing to defend a claim potentially within its policy coverage is liable for the amount of settlement and estopped from denying coverage?

Whether an excess insurer's (American States') payment of a claim, due to the wrongful refusal of the Pennsylvania Insurance Guaranty Association, or its insolvent member, to defend or pay the ·claim, should be reimbursed to the excess insurer or should be barred by the exclusion of subrogation claims under the Insurance Guaranty Act's definition of a covered claim (40 P.S. 1701.103(5)(b) (Repealed))?

Whether, after breach of its duty to defend, and subsequent to settlement of the underlying claim, an insurer (Motorists Mutual) should be estopped from submitting evidence of the lack of coverage for the claim under its policy?

Appellant's brief at 2.

It is clear that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. Rule 1035. Upon review, this Court will overturn a trial court's entry of summary judgment "only if there has been an error of law or a clear abuse of discretion." *Hoffman v. Brandywine Hospital*, 443 Pa.Super. 245, 661 A.2d 397, 399 (1995).

Pursuant to Pennsylvania law, an

insurer agrees to defend the insured against any suits arising under the policy even if such suit is groundless, false, or fraudulent.' Since the insurer thus agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, our cases have held that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy.

*Gedeon v. State Farm Mutual Automobile Ins.*, 410 Pa. 55, 188 A.2d 320, 321–22 (Pa. 1963) (emphasis in original). Moreover, "[i]f the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover." *Erie Insurance Exchange v. Transamerica Insurance*, 516 Pa. 574, 533 A.2d 1363, 1368 (Pa.1987) (citations omitted). The "first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage. After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage." *General Accident Insurance Co.*

---

**1.** 40 P.S. § 1701.101 *et seq.*, repealed December 12, 1994.

*v. Allen*, 547 Pa. 693, 692 A.2d 1089, 1095 (Pa.1997) (citations omitted).

The first issue involves interpreting the State Auto insurance policy to determine if it had a duty to defend under its policy coverage. State Auto issued a personal auto insurance policy to Ronald G. McIntire as the named insured for a period from March 17, 1990 to September 17, 1990. The State Auto policy provides:

Part A – Liability Coverage – Insuring Agreement

A. We will pay damages for "bodily injury" . . . for which any "insured" becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" . . . not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto."

R. at 262a.

American States first proposes an interpretation of State Auto's policy that would disregard the actual coverage of the policy. American States asserts that because "State Auto issued the McIntires an auto liability policy to provide protection from auto related claims and the tort Complaint sought to impose liability upon the McIntires for the damages sustained in an auto accident, that the tort action *potentially* came within the coverage of the State Auto policy." Appellant's brief at 19 (emphasis in original). American States also asserts that under the policy State Auto "agreed to defend the McIntires in *any suit* asking for damages for bodily injury because of *an auto accident*," and that the "McIntires are insured for the use of *any* auto." Appellant's brief at 19, 22 (emphasis in original). The duty to defend

only arises if the claims potentially come within the policy coverage. As the State Auto policy states: "[w]e have no duty to defend any suit or settle any claim for 'bodily injury' . . . not covered under this policy." R. at 262a. We have stated before, the duty to defend " 'applies only with "respect[ ][to] insurance afforded by th[e] policy." It does not require defense of **any** suit brought, but only to suits involving claims within the scope of the policy.' " *General Accident Insurance, Co. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (Pa.1997) (emphasis added) (quoting *Warner v. Employers' Liability Assurance Corporation*, 390 Pa. 62, 133 A.2d 231 (Pa. 1957)). American States cannot assert that there is potential coverage because a policy contains the words *any suit* or *any auto*. The actual coverage of the policy has to be determined. Therefore, we dismiss American States initial interpretation of State Auto's policy coverage.

■ Alternatively, American States attacks specific language in State Auto's policy to assert that there was potential coverage. This is with respect to the definition of insured: "You or any 'family member' for the ownership, maintenance or use of any auto." American asserts that this language means that the policy "contemplates coverage for autos that are neither owned by, nor operated by the McIntires." Appellant's brief at 22. Thus, bringing the allegations in the tort complaint potentially within State Auto's coverage. We disagree.

Ownership, maintenance, and use are activities that must be done by a person or persons. The only persons expressly referred to in the definition of insured are the named insured and his family members. The only reasonable interpretation of this definition of insured is that coverage extends only to the ownership, maintenance or use of an auto by a member of the McIntire family. Furthermore, the exclusion section of State Auto's policy states what vehicles are covered or not covered under the policy. Section B.2 provides:

We do not provide Liability Coverage for the ownership, maintenance or use of: . . .

2. Any vehicle, other than 'your covered auto,' which is:

    a. owned by you; or

    b. furnished or available for your regular use.

R. at 263a. This clearly means that the policy only covers cars owned, maintained or used by the McIntires.

Applying this policy interpretation to the tort complaint, we find there was no potential claim triggering a duty for State Auto to defend. The underlying tort complaint contains claims against the McIntires for both vicarious liability and direct liability. The relevant portions of the tort complaint establish that defendant Kimmel was using or operating one of the vehicles involved in the accident, the vehicle being used by Kimmel was owned by him, and that the accident was caused by any or all of the thirteen alleged negligent acts of Kimmel. Counts 12 and 15 allege that defendant Kimmel was acting as the servant, agent and/or employee of each of the defendants and was within the scope of his employment when the accident occurred. The most contested part of the complaint, as to meaning, is paragraph 17 which states that "[t]he injuries and damages set forth hereafter were caused by and were the direct and proximate result of the Defendant's negligence, either directly or through servants, agents and/or employees, in any or all of the following respects." R. at 214a. The thirteen subparagraphs under paragraph 17, however, list only negligent acts by defendant Kimmel.

The vicarious liability claim did not trigger a duty to defend. State Auto's policy requires that the liability arise from the McIntires' ownership, maintenance or use of an auto. Consequently, another person's use of an auto that is not maintained or owned by the McIntires is not covered by the policy. Therefore, there was no coverage under the State Auto policy for any accident involving Kimmel's own vehicle while he was driving it.

        The direct negligence claim against the McIntires is non-existent. American States asserts that the phrases "Defendant's negligence" and "directly caused" in paragraph 17 of the complaint state a cause of action directly against the McIntires for negligence. These phrases are merely conclusory[2] and the complaint includes no specific allegations of facts of the McIntires' independent negligence. "Where the complaint or petition against the insured states conclusions rather than allegations of facts, the statement of conclusions has no effect whatsoever on the determination of whether or not the action brought against the insured is within the coverage of the policy." 44 Am. Jur.2d Insurance § 1413 (1982). In fact, the complaint does not either expressly or impliedly refer to the McIntires' ownership, maintenance or use of any vehicle or allege any

---

**2.** Appellant relies on *Connor v. Allegheny General Hospital*, 501 Pa. 306, 461 A.2d 600 (Pa.1983) to assert that our Supreme Court has given effect to conclusory allegations. First, we note that *Connor* addressed the right to amend a complaint after the statute of limitations to specify other ways that the defendant was negligent in addition to the negligent acts already alleged in the complaint. This was allowed because in the original complaint there was an allegation of "otherwise failing to use due care" after the other alleged acts of negligence were listed and the Supreme Court reasoned that "[a]ppellant's proposed amendment simply specifies the other ways in which the appellee was negligent." *Id.* 461 A.2d at 602. This is not the case here because there were absolutely no allegations of negligent acts on behalf of the McIntires.

Appellant claims that, in *Connor*, "the Supreme Court put the burden on defendants to preliminarily object to averments that were unspecific and the **failure to object [would] result[ ] in the allowance of any theory of recovery cognizable within the general averment.**" Appellant's brief at 21 (emphasis added). This is an erroneous reading of *Connor.* The only reference to objecting to allegations is in footnote three. Footnote three makes it clear that if a defendant does not understand what an allegation means it could file preliminary objections and move for a more specific pleading or move to strike that portion of the complaint. The Court went on to state that "[t]he [plaintiff's statement] may not be a statement in a concise and summary form of the material facts upon which the plaintiff relied ... [and, in that case,] a defendant may move to strike out an insufficient statement, or, if it is too indefinite, may obtain a rule for one more specific. **Failing to do either, he will not be entitled to a compulsory nonsuit because of the general character of plaintiff's statement.**" *Id.* at 602 n. 3 (emphasis added). This does not stand for the assertion appellant makes in this regard.

independent acts of negligence by the McIntires. As we have stated, it is the factual allegations of the complaint that trigger a duty to defend. As to the State Auto policy, there were no facts alleged that triggered such a duty either through vicarious or direct liability. In conclusion, we affirm the trial court's grant of summary judgment for State Auto declaring that it did not have a duty to defend. In light our holding, we need not address appellant's issues regarding State Auto's duty to indemnify.

The next issue involves the responsibilities of PIGA. We are asked to affirm the trial court's holding that PIGA had a duty to defend the McIntires pursuant to the Highland insurance policy coverage. After an extensive review of the briefs and trial court opinion on this issue, as well as reviewing the policy ourselves, we agree with the trial court that PIGA had a duty to defend because there was a claim that potentially came within the coverage of the policy. Therefore, we affirm the holding of the trial court with respect to this issue.

■ Whether PIGA has a duty to indemnify American States depends upon the statutory limitations placed upon its coverage. The Pennsylvania Insurance Guaranty Association Act provides in part:

> (1) The association shall:
>
>> (i) Be obligated to make payment to the extent of the covered claims of an insolvent insurer existing prior to the determination of said insurer's insolvency ... but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less than three hundred thousand dollars.
>>
>> (ii) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent.

40 P.S. § 1701.201(b)(1)(i)–(ii). Based upon this section, American States argues that PIGA is responsible to indemnify it for the costs of settlement. PIGA argues that American States is prevented from recovery

by the section defining what a covered claim is under the Act. According to the statute:

> (a) "Covered claim" means an unpaid claim, including a claim ... which arises under a ... casualty insurance policy of an insolvent insurer and is:
>
>> (i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth.
>
> (b) **A covered claim shall not include any amount due any insurer ... as a subrogation recovery or otherwise.**

40 P.S. § 1701.103(5)(a)(i), (b) (emphasis added). In short, PIGA is arguing that it has no duty to indemnify American States because American States is seeking recovery under a theory of equitable subrogation which is not a covered claim under the PIGA statute.

The purpose of the Act is "[t]o provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims, and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S.§ 1701.102. In *Luko v. Lloyd's London*, 393 Pa.Super. 165, 573 A.2d 1139 (Pa.Super.1990), Judge Johnson discussed the purpose and intent of the Act:

> "The statutory purpose is to place claimants in the same position that they would have been in if the liability insurer had not become insolvent." The intent of the Act is not to protect other insurers by filling in for every aspect of the underlying insurance but rather to fill in only as the insolvency adversely impacts upon the insured. To illustrate, a section of the Act specifically prohibits insurers from using the category "covered claim" to mean amounts due them from other insurers: A covered claim shall not include any amount due any insurer ... as a subrogation recovery or otherwise.

573 A.2d at 1143 (citations omitted) (quoting *Blackwell v. Pennsylvania Insurance Guaranty Assoc.*, 390 Pa.Super. 31, 567 A.2d 1103, 1106 (Pa.Super.1989)). Although *Luko* did not involve a subrogation claim issue, Judge Johnson made it clear that the purpose and

intent of the Act is not to protect other insurers.

American States relies on *Donegal Mutual Insurance Co. v. Long*, 528 Pa. 295, 597 A.2d 1124 (Pa.1991) to argue that an excess insurer has a right to have PIGA apply its coverage before it does. The *Donegal* case arose from a fatal car accident. One driver, Mr. Hirst, was operating a leased car. The leasing company, Jones Leasing, contracted to provide liability coverage to Mr. Hirst in the amount of one million dollars. Jones Leasing, in turn, purchased a one million dollar insurance policy from Midland Insurance Company for coverage of the leased car. Mr. Hirst also had his own auto insurance through Donegal. Part of the Donegal policy provided excess coverage to Mr. Hirst for any vehicles driven by him, but not owned by him.

Midland Insurance Company became insolvent following the accident, and PIGA took its place. Pursuant to the agreement with Midland, Jones Leasing had a $250,000 deductible on the insurance policy. PIGA executed settlement with the estate of the other driver in the accident. Thus, there was no subrogation issue. Jones Leasing brought an action to determine the order of priority between PIGA and Donegal.[3] The order of priority between PIGA and Donegal would affect the liability of Jones Leasing in having to pay its deductible. *Donegal*, 597 A.2d at 1126 n. 9–10. Therefore, *Donegal* is not applicable to this case because it did not involve a subrogation claim. We reject American States reliance on *Donegal* and hold that its subrogation claim is not a covered claim under the Act.

■ The final issue involves the obligations of Motorists. Motorists was found to have a duty to defend because its policy had a provision that included coverage for a "temporary substitute auto." As a result, the trial court ordered Motorists to pay half the costs of defense to American States. American States then sought a declaration that Motorists was required to indemnify it for costs of settlement. Motorists presented the trial court with affidavits from the McIn-

tires affirming that Kimmel's vehicle was not a temporary substitute auto. Therefore, the trial court held that although there was a duty to defend, there was not a duty to indemnify because Motorists proved that the claim did not fall within its scope of coverage.

■ Appellant contends that Motorists should have been estopped from presenting evidence that the claim was not covered under its policy after it breached its duty to defend and the underlying case settled. American States relies upon *Pacific Indemnity Co. v. Linn*, 590 F.Supp. 643 (E.D.Pa. 1984), *aff'd* 766 F.2d 754 (3rd Cir.1985). In *Linn*, a declaratory judgment action was instituted to determine the defense duties of various insurers to their common insured for several lawsuits filed against the insured. The insurers refused to defend and the tort actions were settled prior to a determination of their obligations. The causes of action in the underlying complaints included malpractice, professional negligence, breach of warranty, and products liability. The court held that

> The underlying bookreader claims ... have all now been terminated by settlement or final judgment in favor of Dr. Linn. The obligation to indemnify in each case ... is now ripe for a decision. Unlike the duty to defend, the duty to indemnify 'cannot be determined merely on the basis of whether the factual allegations of the complaint potentially state a claim against the insured.' Rather, there must be a determination that the insurer's policy actually covers a claimed incident.
>
> ... However, because those cases implicating the duty to indemnify were terminated by settlement rather than final judgment, it is now impossible to determine on what theories of liability, if any, the underlying plaintiffs would have prevailed.... As a result, the duty to indemnify must follow the duty to defend.
>
> Thus, the duty to defend in effect carries with it the conditional obligation to indemnify until such time as it becomes clear that there can be no recovery within the insuring clause.

---

**3.** In fact, PIGA was not a participating party to the appeal. *Donegal,* 597 A.2d at 1126 n. 9.

*Id.* at 650–51 (citations and footnotes omitted). The court found that because the underlying cases were settled, there were no factual findings to establish which claims the plaintiffs would have prevailed on at a trial. As a result, the insurers were unable to confine potential claims to those clearly outside the scope of coverage of their respective policies. Thus, the court held that each insurer was liable to indemnify the settlement in the underlying claims. American States proposes that this case establishes a blanket rule that a breach of the duty to defend automatically requires the insurer to indemnify if the underlying action was settled.

■ The trial court rejected this proposition in its opinion deciding the summary judgment motion, wherein it stated that

> [t]he critical distinguishing factor between *Linn* and the present case is that in *Linn,* the determination of which insurance company was under a contractual duty to indemnify was precluded by the settlement of the underlying actions. The federal court held that, with regard to the claims that were settled, the duty to indemnify necessarily had to follow the duty to defend because settlement made it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed had each claim gone to trial, thereby precluding a determination of which insurer's policy coverage applied.
>
> However, in the present case, the settlement of the underlying tort claim has not made it impossible to determine if the Motorists' policy provided coverage. The issue of whether the vehicle being driven by Kimmel at the time of the accident was a "temporary substitute auto" under the terms of the Motorists policy is one that would not have been resolved in the tort litigation, even if it had gone to trial. The issue would not have been relevant to the tort plaintiffs in their proving liability or damages; now [sic] would it have been relevant to anyone's defense. It would not have been a proper subject of a special interrogatory answerable by the jury. Indeed, McIntire's tort trial counsel would have been precluded from introducing facts which would have defeated his claim

of coverage, since doing so would have constituted a violation of counsel's obligation to zealously represent the interests of his client. In short, the settlement of the underlying tort claim in the instant matter has not made it impossible to determine if the Motorists' policy provided McIntire with coverage, and the rationale for applying the "duty to indemnify follows the duty to defend" rule enunciated in *Linn* simply is not present. Therefore, it should still be possible for Motorists to demonstrate that the underlying tort claim was one outside the scope of its policy coverage.

Trial Court Opinion, 7/18/97, at 11–13 (footnotes omitted). We agree with the trial court's reasoning. Thus, we will not adopt a blanket rule that if there is a breach of a duty to defend and a settlement, then it automatically requires the breaching insurer to indemnify. As stated above, a duty to indemnify requires an inquiry into whether there was actual coverage for the underlying claim. The recovery for breaching a duty to defend is to require the breaching insurer to pay for costs of defense. *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 188 A.2d 320 (Pa.1963). Motorists has been ordered to reimburse American States for half of the litigation costs, but we will not order it to pay for a claim that has been proven outside the coverage of its policy. In conclusion, we hold that the trial court did not err by allowing Motorists to present proof that the underlying claim was not covered under its policy.

For the foregoing reasons, we affirm the trial court's orders dated October 18, 1996, and January 21, 1998.

Orders affirmed.