# Berlin v. Maryland Casualty Co.

C.P. of Chester County, no. 99-09597.

*Richard P. S. Hannum,* for plaintiffs.
*Joseph J. Dougherty,* for defendants Rhodes Financial and DeSeve.

WOOD, *S.J.,* December 19, 2002—Jeffrey Berlin is a builder of moderately priced custom and semi-custom homes. By moderately priced, I mean that Mr. Berlin, through his company Berlin Construction Co., generally builds homes in the price range of $200,000 to $400,000. However, in late 1996 or early 1997, a couple named Kevin and Carolina Murphy approached Mr. Berlin to construct for them a 14,300 square foot highly customized residential home in Delaware. Mr. Berlin priced the project at $2 million. It was the most expensive home he had ever been asked to construct.

Mr. Berlin had professional liability insurance through Maryland Casualty Co. Rhodes Financial Services Ltd. was the broker and Michael DeSeve was Mr. Berlin's insurance agent at Rhodes. Mr. Berlin's builder's risk policy covered construction projects up to $750,00. On or about March 23, 1997, concernedS about obtaining

enough insurance to protect him on the Murphy project, Mr. Berlin faxed some questions about his coverage to Mr. DeSeve. Mr. DeSeve phoned Mr. Berlin and suggested increasing the limits on his builder's risk policy. He faxed to Mr. Berlin a "builder's risk questionnaire" to fill out and return. The questionnaire solicited information about proposed construction projects exceeding $1 million in value. Mr. Berlin never completed or returned the questionnaire.

Mr. Berlin claims to have had two additional conversations with Mr. DeSeve in which he alleges he expressed to Mr. DeSeve his concerns about adequate insurance for the Murphy project and in which he alleges Mr. DeSeve responded that he was "pretty well covered." Mr. DeSeve, however, did not recall any conversations which specifically mentioned the Murphys. I conclude that although Mr. Berlin may have mentioned a "big job" or something of that sort, he never gave DeSeve any specifics on the Murphy job, such as would enable DeSeve to obtain insurance appropriate to the additional risk. In fact, Berlin never reported to DeSeve that he was working on the Murphy project, as was required by his Maryland Casualty policy.

Predictably, the relationship between Mr. Berlin and the Murphys soured after construction began. Ultimately, it terminated on November 16, 1997. Subsequently, the Murphys sued Berlin, Berlin Construction Co., their real estate agent and the agency by whom she was employed, and Berlin's architect, Edward Hinderliter, for, among other claims, fraud, breach of contract, and negligence. Maryland Casualty Co. refused to tender Mr. Berlin a defense, claiming that his liability policy did not pro-

vide coverage for the types of claims brought by the Murphys.

After a bifurcated hearing, the Honorable William T. Quillen of the Delaware Superior Court issued a letter opinion and order finding in favor of the Murphys on the issue of liability. He determined that Mr. Berlin and Berlin Construction Co. breached the covenants of good faith and fair dealing implied in every contract. With no support from his carrier, Mr. Berlin opted to settle with the Murphys for the sum of $222,576.23. In addition, he incurred legal fees in the amount of $95,500 in connection with his defense of the Murphy suit. Mr. Berlin then brought suit in Chester County against his insurance agent, Michael DeSeve, his broker, Rhodes Financial Services Ltd., and his carrier, Maryland Casualty Co. He later joined Kevin and Carolina Murphy as indispensable parties.

Mr. Berlin sued the defendants in six counts. Count I requested a declaratory judgment against Maryland Casualty Co. on the issue of coverage; Count II alleged breach of contract by Maryland Casualty Co.; Count III alleged bad faith by Maryland Casualty Co.; Count IV set forth a claim for breach of contract against Rhodes and DeSeve; Count V alleged negligence by Rhodes and DeSeve; and Count VI requested a declaratory judgment against Rhodes and DeSeve. I dismissed Maryland Casualty Co. from the action because I found that Mr. Berlin's actual policy did not provide coverage for claims like those presented by the Murphys. (See 8/23/00 order.) I restricted the issues for trial to those raised against Rhodes and DeSeve in Counts IV and V of Mr. Berlin's complaint.

I held a bench trial on this matter over the course of two days, April 29 and 30 of 2002. At the close of plaintiffs' case, I nonsuited Mr. Berlin and his company on Count IV of the complaint, leaving the only outstanding issue to be whether Rhodes and DeSeve breached a duty of care to Mr. Berlin and Berlin Construction Co. The parties concluded with oral arguments on August 20, 2002. For the following reasons, I find in favor of defendants on the final count.

An insurance agent's duties are well-defined. An insurance agent is held to the standard of care found in section 299 of the Restatement (Second) of Torts. *Swantek v. Prudential Property & Casualty Insurance Co.*, 48 D.&C.3d 42 (1988); *Peterson v. State Farm Insurance Co.*, 133 P.L.J. 437 (1985). This section provides

"Unless he represents that he has a greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill or knowledge normally possessed by members of that profession or trade in good standing in similar communities." Restatement (Second) Torts §299.

The duty of care owed to an insurance purchaser by an insurance agent on a claim of simple negligence is to obtain the coverage that a reasonably prudent professional insurance agent would have obtained under the circumstances. *Weisblatt v. Minnesota Mutual Life Insurance Co.*, 4 F. Supp.2d 371, 379 n.7 (E.D. Pa. 1998). See also, *Fiorentino v. Travelers Insurance Co.*, 448 F. Supp. 1364 (D.C. Pa. 1978).

According to the facts at bar, Mr. DeSeve, Mr. Berlin's insurance agent and the president of Rhodes Financial

Services Ltd., faxed Mr. Berlin a questionnaire to be filled out preliminarily to increasing Mr. Berlin's builder's risk policy. The questionnaire solicited information about the proposed high-value project Mr. Berlin contemplated for the Murphys. Mr. Berlin never returned this questionnaire to Mr. DeSeve. Consequently, Mr. DeSeve never procured high-value builder's risk coverage for Mr. Berlin.

After careful consideration, I conclude that responsibility for the gap in Mr. Berlin's coverage lies with Mr. Berlin, not Mr. DeSeve. Mr. Berlin failed to respond to Mr. DeSeve's questionnaire. Mr. DeSeve had no obligation to remind, push or prod Mr. Berlin to fill it out. Mr. Berlin was aware that he needed increased coverage (4/29/02 N.T. 45-46) but did not follow Mr. DeSeve's instructions to make application. Thus it is not Mr. DeSeve's fault that such coverage was not obtained.[1]

In so concluding, I am mindful of a recent appellate decision, *Gorski v. Smith,* in which the Superior Court, in a case of first impression, recognized contributory negligence as a complete defense to a legal malpractice action sounding in negligence. *Gorski v. Smith*, 812 A.2d 683 (Pa. Super. 2002). The court cited with approval a California appellate case, *Theobald v. Byers,* which discussed the role of contributory negligence in medical

---

1. There is no merit to Mr. Berlin's contention that Mr. DeSeve breached his duty by failing to inform Mr. Berlin that his architect needed insurance. Mr. Berlin represented to Mr. DeSeve in writing that all of his subcontractors were insured. Furthermore, Judge Quillen found Mr. Berlin liable for breach of the covenant of good faith and fair dealing. It is not clear how the question of his architect's insurance would impact Mr. Berlin's liability for his own misconduct.

malpractice actions and concluded that "[t]here would seem to be no reason whatever why the same rule should not be applicable in a legal malpractice action where there is evidence that a client chose to disregard the legal advice of his attorney." *Theobald v. Byers,* 193 Cal. App. 2d 147, 150, 13 Cal. Rptr. 864 (Cal. App. 1 Dist. 1961). The court also cited cases from other jurisdictions holding that legal malpractice is a form of negligence and should occupy, vis-à-vis the defense of contributory negligence, the relationship the doctrine has to other forms of negligence, such as medical malpractice. See *Gorski v. Smith,* 812 A.2d 683, 703 (Pa. Super. 2002) (and cases cited therein). The Superior Court, however, refused to apply the doctrine of comparative negligence to the legal malpractice action, explaining that this defense has been limited to actions for negligence resulting in death or injury to a person or tangible property, exclusive of purely monetary loss. *Gorski,* 812 A.2d 683, 702 (Pa. Super. 2002). According to *Gorski,* "since legal malpractice cases do not involve bodily injury or damage to property . . . legal malpractice actions are outside the scope of the comparative negligence act, and . . . the doctrine of contributory negligence [applies]."

Mr. Berlin's breach of fiduciary duty claim sounds in tort, professes purely economic loss, and strikes me as quite similar to a claim for legal or other professional malpractice. With this in mind, it seems to me that the principles enunciated in *Gorski* would apply here.

There is no question in my mind that Mr. Berlin was contributorily negligent. He alone was responsible for notifying his carrier of the projects in which he was engaged and for making application to secure adequate

coverage. That he utterly failed in this regard is beyond peradventure. Mr. DeSeve had no duty to procure coverage for Mr. Berlin for projects about which he was not adequately informed. An agent's duty to procure insurance is predicated upon the insured's informing the agent of his particular needs. See *Weisblatt v. Minnesota Mutual Life Insurance Co.,* 4 F. Supp.2d 371 (E.D. Pa. 1998). Mr. Berlin, by failing to return a completed questionnaire or provide Mr. DeSeve with the specifics of the Murphy project, failed to adequately inform Mr. DeSeve of his insurance needs, so as to trigger the latter's duty to undertake further action. As he suffered a purely economic loss, his contributory negligence is a complete bar to recovery. See *Gorski,* 812 A.2d 683 (Pa. Super. 2002).

During the course of these proceedings, Mr. Berlin and Berlin Construction Co. filed a motion in limine asking me to disallow the testimony of Frank Siegel. I chose to allow that testimony. To be perfectly frank, I did not place any reliance on his testimony in reaching these conclusions. He testified to three things, basically: (1) an agent's duty—in this respect, he virtually agreed with Berlin's expert; (2) what coverage was available—in view of my conclusion that Mr. Berlin never provided the necessary information to Mr. DeSeve, this testimony becomes unimportant; and (3) whether the available coverages would have protected Mr. Berlin—as to that, I think it is my responsibility to read and interpret the coverage.

During the trial, I would not permit Mr. Berlin's expert to say he thought Mr. DeSeve had failed in his duty to Mr. Berlin; again, I thought that was my call to make. Mr. Siegel was asked the same question and I allowed

him to answer it because there was no objection. But again, I felt that decision was mine, and I did not give any weight to Mr. Siegel's testimony.

In the event a reviewing court disagrees with my conclusions, I will discuss some further issues present in the case. Had Mr. Berlin made proper application for increased coverage, Mr. DeSeve would have had the responsibility to procure additional coverage for him. At the time, Maryland Casualty Co. offered two types of policies which plaintiffs argue are applicable to this situation. (See exhibits P-1, P-2.) The first, a contractor's professional liability policy, provided that Maryland Casualty would pay all amounts in excess of the deductible up to the limit of liability for which the insured became obligated to pay as a result of a "wrongful act" that resulted in a claim anywhere in the world. (Exhibit P-1.) It defined a "wrongful act" as "a negligent act, error or omission in the performance of *professional services* for others by *[the insured]* or any person or entity . . . for whom *[the insured is]* legally liable." *Id.* (emphasis in original) Under the policy, "*[a] wrongful* act cannot arise from dishonest, fraudulent, malicious or criminal conduct committed by *you* or at *your* direction or with *your* prior knowledge." (Exhibit P-1.) (emphasis in original) It excluded from coverage claims

"(B) arising out of:

"(1) *your* alleged liability under any oral or written contract or agreement, including but not limited to express warranties or guarantees; or . . .

"(C) arising out of the cost to repair or replace *your* faulty workmanship in connection with any construc-

tion, erection, fabrication, installation, assembly, manufacture or remediation including any materials, parts or equipment furnished in connection therewith." (Exhibit P-1.)

As it excludes coverage for fraudulent acts, contract-related claims, and any claims arising out of the cost to repair or replace faulty workmanship in connection with construction, exhibit P-1 would not have provided relief for Mr. Berlin.

Mr. Berlin also introduced exhibit P-2, an exemplar of Maryland Casualty's directors and officers liability coverage. The sample policy provides that "[t]he insurer shall pay all *loss* resulting from any *claim* first made against any *insured person* during the *policy period* or the *extended reporting period,* if applicable, for a *wrongful act.*" (Exhibit P-2.) (emphasis in original) A "wrongful act" is defined as

"(a) any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the *insured persons* in their capacity as such or in an *outside position,* or

"(b) any matter claimed against the *insured persons* solely by reason of their serving in such capacity or in an *outside position.*" (Exhibit P-2.) (emphasis in original)

However, exhibit P-2 then goes on to exclude coverage "for any actual or alleged bodily injury, sickness, disease, emotional distress, mental anguish or death of any person, or damage to or destruction of any tangible property including loss of use." (Exhibit P-2.) Exhibit P-2 also excludes coverage for claims "for any *wrongful*

*act* by the *insured persons* in the discharge of their duties in their capacities, or solely by reason of their status, as directors, officers, trustees, regents, governors or employees of any entity other than *named company* or any *subsidiary.*" (Exhibit P-2.) (emphasis in original) Finally, it excludes

"any *claim* made against the *insured persons* for which the *named company* or any *subsidiary* thereof are not required, or have determined that they are not permitted by law, to indemnify the *insured persons* for such loss:

"(a) where it is established in a final adjudication by the judge, jury or arbitrator in such *claim* that such *named company insured* in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled; or

"(b) where it is established in a final adjudication by the judge, jury or arbitrator in such *claim* that such *named company insured* committed any fraudulent or criminal *wrongful act* with actual knowledge of its wrongful nature or with intent to cause damage." (Exhibit P-2.) (emphasis in original)

Reading through the Murphys' amended complaint with the terms and conditions set forth in this policy in mind, it appears that exhibit P-2 might have provided coverage for the cost of the remedial work in connection with Counts IV and V of the Murphy complaint and possibly for the claim of unjust enrichment in Count VI as to Mr. Berlin, although not as against his architect, Mr. Hinderliter. A "wrongful act" *is* described as, inter alia, including a "breach of duty," although I personally have never had a case where an insurer defended someone who was sued for breach of a *contractual* duty.

Because some of the counts in the Murphys' amended complaint could have come within the scope of the coverage provided by exhibit P-2, the question becomes whether, had Mr. Berlin properly informed Mr. DeSeve of his needs so as to trigger Mr. DeSeve's responsibility to provide appropriate coverage, Maryland Casualty Co. (or any insurer with whom DeSeve might have placed the insurance) would have had the duty to defend Mr. Berlin on all counts set forth in the amended complaint and to indemnify him in the event he ultimately prevailed.

The duty to defend and the duty to indemnify are independent of each other. *Continental Insurance Co. v. McKain,* 821 F. Supp. 1084 (E.D. Pa. 1993), *aff'd,* 19 F.3d 642 (3d Cir. 1994). Under Pennsylvania law, as consideration for premiums paid, the insurer contractually obligates itself to defend its insured; this obligation arises whenever the allegations against the insured state a claim to which the policy potentially applies even if the allegations are groundless, false, or fraudulent. *American Contract Bridge League v. Nationwide Mutual Fire Insurance Co.,* 752 F.2d 71 (3d Cir. 1985). An insurer who refuses to defend a claim potentially within the scope of the policy does so at its own peril. *Allstate Insurance Co. v. Brown,* 834 F. Supp. 854 (E.D. Pa. 1993). The duty to indemnify arises only when the insured is determined to be liable for damages within the coverage of the policy. *Britamco Underwriters Inc. v. Stokes,* 881 F. Supp. 196 (E.D. Pa. 1995). The insurer's duty to defend is broader than its duty to indemnify. *Atlantic Mutual Insurance Co. v. Brotech Corp.,* 857 F. Supp. 423 (E.D. Pa. 1994), *aff'd,* 60 F.3d 813 (3d Cir. 1995).

It is the nature of the claim that determines whether there is a duty to defend. *Roman Mosaic and Tile Co. v. Aetna Casualty and Surety Co.,* 704 A.2d 665 (Pa. Super. 1997). Not all claims asserted against an insured activate the duty to defend—only those claims potentially covered by the policy. *Aetna Casualty & Surety Co. v. Roe,* 437 Pa. Super. 414, 650 A.2d 94 (1994); *D'Auria v. Zurich Insurance Co.,* 352 Pa. Super. 231, 507 A.2d 857 (1986). The insurer has the duty to defend so long as there is a possibility that the contract covers the claim—the insurer has to prove that there is definitely no coverage before it is relieved of the duty to defend. *DeHaven v. Safeguard Insurance Co.,* 71 D.& C.2d 429 (1975). Any doubts regarding the duty to defend must be resolved in favor of the insured. *Western World Insurance Co. v. Reliance Insurance Co.,* 892 F. Supp. 659 (M.D. Pa. 1995); *Federal Kemper Insurance Co. v. Jones,* 777 F. Supp. 405 (M.D. Pa. 1991).

The question has been raised whether the existence of one covered claim obligates the insurer to defend the entire action. The cases go both ways on this one. The seminal case is *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959), and it has been cited in support of both positions.

Some of the cases that refer to a duty to defend the entire action if any allegation in the complaint may invoke the protection of the policy, such as *Allstate Insurance Co. v. Brown,* 834 F. Supp. 854 (E.D. Pa. 1993); *American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa. Super. 170, 628 A.2d 880 (1993); *Bracciale v. Nationwide Mutual Fire Insurance Co.,* 1993 WL 323594 (E.D. Pa. 1993), are based on earlier cases that said im-

plicated *claims* must be defended if some allegations in the complaint invoked the policy and others did not. See *Safeguard Scientifics Inc. v. Liberty Mutual Insurance Co.,* 766 F. Supp. 324 (E.D. Pa. 1991), *aff'd in part and rev'd in part,* 961 F.2d 209 (3d Cir. 1992) ("claims" language; no reason given for reversal); *C. Raymond Davis & Sons Inc. v. Liberty Mutual Insurance Co.,* 467 F. Supp. 17 (E.D. Pa. 1979) ("claims" language); *Air Products and Chemicals Inc. v. Hartford Acc. and Indem. Co.,* 707 F. Supp. 762 (E.D. Pa. 1989), *on reconsideration in part,* 1989 WL 73656 (E.D. Pa. 1989), *aff'd in part, vacated in part,* 25 F.3d 177 (3d Cir. 1994) ("claims" language). Under these cases it would seem that only those claims which invoked the protection of the policy would need to be defended.

However, there are a couple of cases out there that say that the entire *action* needs to be defended if even one allegation of the complaint may possibly come within the parameters of the policy and they do not rely on "claims" language cases. See *Widener University v. Fred S. James & Co. Inc.,* 371 Pa. Super. 79, 537 A.2d 829 (1988) (relying on *Cadwallader, supra*); *CAT Internet Systems Inc. v. Providence Washington Insurance Co.,* 153 F. Supp.2d 755 (E.D. Pa. 2001) (ultimately traceable to *Cadwallader, supra*); *Rector, Wardens and Vestrymen of St. Peters Church in City of Philadelphia v. American National Fire Insurance Co.,* 2002 WL 59333 (E.D. Pa. 2002) (unreported) (ultimately traceable to *Cadwallader, supra*).

*Cadwallader, supra,* involved the case of an attorney who promised to hold fees for two other attorneys out of a settlement in exchange for their withdrawal from a case.

*Id.* Unfortunately, his unwitting associate disbursed the entire sum to the clients. *Id.* The unpaid attorneys sued the promisor. *Id.* His professional liability carrier refused to defend, claiming that the failure to disburse the funds to the appropriate parties was deliberate and fraudulent and therefore not covered by the policy. *Id.* The complaint was brought in two counts, with only one potentially covered by the policy. *Id.* As I read the case, the Pennsylvania Supreme Court held that because one count could possibly have been covered by the policy, the insurance company had a duty to defend the entire action. *Id.* Consequently, I conclude that had Mr. Berlin properly informed Mr. DeSeve of his coverage needs, Maryland Casualty Co. would have been obligated to tender a defense to the entire Murphy suit, as some of the claims therein would invoke the coverage of applicable policies.

Next, I must address the proper measure of damages. The parties have stipulated that the reasonable and necessary attorney's fees and expenses paid by Mr. Berlin in defending the Murphy lawsuit were $95,500. The parties also stipulated that the settlement of $222,576.23 paid by Mr. Berlin to the Murphys was reasonable as well. Upon settlement, the parties consented to have all claims and counterclaims dismissed with prejudice. Judge Quillen in Delaware signed an order of dismissal.

The question is whether an insurer is bound to indemnify for a settlement that occurs prior to factual findings resolving coverage issues. As to this point, Pennsylvania has refused to adopt a blanket rule requiring a breaching insurer to indemnify in the case of a settlement following the failure of the insurer to defend. See *American*

*States Insurance Co. v. State Auto Insurance Co.,* 721 A.2d 56 (Pa. Super. 1998). Whether indemnification necessarily follows settlement depends on whether the settlement makes it impossible to determine upon which theories of liability the underlying claimants would have prevailed or which insurance companies would have had to pay. *Id.* For example, *Pacific Indemnity Co. v. Linn,* 766 F.2d 754 (3d Cir. 1985), upon which Mr. Berlin relies, involved multiple insurance companies. The court held that the duty to indemnify was automatic because the settlement made it impossible to determine upon which theories the underlying claimants would have prevailed and which insurance company's policy would have applied. *Id.* In contrast, it was clear in *American States Insurance Co., supra,* which theory of liability prevailed and there was only one insurance company being tapped to indemnify. *American States Insurance Co. v. State Auto Insurance Co.,* 721 A.2d 56 (Pa. Super. 1998). The court noted that the insurance company was capable of challenging coverage through the judicial system. *Id.* The court held therefore that the "duty to indemnify follows the duty to defend" rule did not apply. *Id.* at 64. Instead, the court stated that, under the circumstances, "a duty to indemnify requires an inquiry into whether there was actual coverage for the underlying claim." *Id.*

The matter at bar presents an *American States Insurance Co.* situation. There is only one carrier subject to the duty to indemnify. It is clear from Judge Quillen's first letter opinion that the theory upon which the Murphys prevailed was breach of contract. I find that, had Mr. Berlin furnished Mr. DeSeve with enough information to invoke Mr. DeSeve's responsibility to procure

directors and officers coverage for Mr. Berlin, Maryland Casualty would have been obligated to indemnify Mr. Berlin in the amount of $318,076.23, the amount Mr. Berlin incurred to defend and settle the suit without Maryland Casualty's support, less any deductible he might have owed under the policy. This is the amount Mr. DeSeve and Rhodes Financial Services Ltd. would have been obligated to pay had plaintiffs been able to establish the proper predicate liability.

Finally, I observe that Kevin and Carolina Murphy are named defendants in this action. There is absolutely no evidence on which to rest a verdict against them, and they are dismissed from the case.

## ORDER

And now, December 19, 2002, consistent with the foregoing opinion, it is hereby ordered and decreed that judgment is entered in favor of defendants Rhodes Financial Services Ltd. and Michael DeSeve in no amount. Defendants Kevin and Carolina Murphy are dismissed from this action.