**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3468
_____

LIBERTY MUTUAL INSURANCE COMPANY

v.

PENN NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,
Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-16-CV-01613)
District Judge:  Hon. Mark R. Hornak
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 4, 2021
_____

Before: SHWARTZ, RESTREPO, and SCIRICA, <u>Circuit Judges</u>.

(Filed: November 18, 2021)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Penn National Mutual Casualty Insurance Company ("Penn National") appeals orders directing it to defend and indemnify an entity insured by Liberty Mutual Insurance Company ("Liberty Mutual"). Because the Court properly determined that Penn National had a duty to defend and indemnify Liberty Mutual's insured, we will affirm.

I

A

A large concrete panel collapsed on and killed Yamil Alexander Gonzalez while he was working at the Grandview Project construction site in New Kensington, Pennsylvania. Cost Company, Liberty Mutual's insured, was a masonry subcontractor on the project, and Cost further subcontracted with Pittsburgh Flexicore Co., Penn National's insured, for the concrete panels. According to the Subcontract Agreement between Cost and Flexicore, Flexicore would "[m]anufacture, furnish, [and] deliver to the project site . . . all required precast hollowcore plank and solid balcony [concrete] slabs required at the Grandview Apartments." App. 114.

The Subcontract Agreement contained a safety provision that deemed Flexicore "solely responsible for the health and safety of its employees, agents, Subcontractors, and other persons on and adjacent to the Work Site." App. 122. The Subcontract Agreement further required Flexicore to obtain general liability insurance and name Cost as an additional insured. The Subcontract Agreement also provided that Flexicore would indemnify Cost "against any and all claims, causes of action, suits, losses, costs, or

2

damages, including attorneys' fees, resulting from the acts, failure to act, omissions, negligence, or fault" of Flexicore, "whether or not said claim . . . is alleged to be caused in part by any act, omission, negligence, or fault" of Cost. App. 124.

Flexicore obtained a general liability policy from Penn National.[1] The Penn National policy contains automatic additional-insured endorsement provisions. The Completed Operations endorsement designates as an additional insured:

> Any person(s) or organization(s) . . . with whom you are required in a written contract . . . to name as an additional insured for the "products-completed operations hazard", but only with respect to liability for "bodily injury" . . . caused, in whole or in part, by "your work", at the location or project designated and described in the contract . . . performed for that additional insured and included in the products-completed operations hazard.

App. 314.[2]

---

[1] Penn National also issued Flexicore an umbrella insurance policy, which Penn National agrees covers Cost if it is determined to be an additional insured under the general commercial policy.

[2] The products-completed operations hazard "[i]ncludes all bodily injury and property damage occurring away from premises [Flexicore] own[s] or rent[s] and arising out of [Flexicore's] product or [its] work," except:
(1) Products that are still in [Flexicore's] physical possession; or
(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
>> (a) When all of the work called for in [the] contract has been completed.
>> (b) When all of the work to be done at the job site has been completed if [the] contract calls for work at more than one job site.
>> (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

App. 333. "Your work" means "work or operations performed by [Flexicore] or on [its] behalf," including "[t]he providing of or failure to provide warnings or instructions." App. 334.

B

Gonzalez's widow, Karina Ramirez, brought a wrongful death and survival action in Pennsylvania state court against Cost and Flexicore, among others involved in the Grandview Project. See Ramirez v. Longwood at Oakmont, Inc., GD No. 10-19146 (Allegheny Cnty. Ct. Com. Pl. 2010). Counts V and VI of the Ramirez Amended Complaint brought wrongful death and survival claims against Cost based on its alleged negligence and failure to maintain adequate safety measures at the Grandview Project. Counts IX and X alleged that Flexicore "negligently failed to ensure that the concrete panel conformed to the manufacturing specifications, negligently failed to have proper warnings or instructions concerning its use, and [] negligently designed [the panels]," and that the defective condition of the concrete panel "was a proximate cause of" Gonzalez's death. App. 105[3]

After Ramirez sued, Cost asked Penn National to defend and indemnify it. Penn National denied the request, contending that the Subcontract Agreement did "not clearly and unambiguously evidence an agreement by [Flexicore] to indemnify Cost Company for its own negligence" and "any additional insured status . . . was terminated when [Flexicore's] operations for [Cost] were completed." App. 258-59. As a result, Liberty Mutual defended Cost and Penn National defended Flexicore in the Ramirez action, which they subsequently settled.

---

[3] Count IX was titled "Wrongful Death (Products Liability)," App. 103, and Count X was titled "Survival Action (Products Liability)," App. 107.

C

Following the settlement, Liberty Mutual filed this suit against Penn National, asserting that Cost was an additional insured under the Penn National policy and seeking reimbursement for the sums it paid to defend and indemnify Cost in the Ramirez action. Liberty Mutual and Penn National each moved for summary judgment on whether Penn National had a duty to defend Cost. The District Court granted Liberty Mutual's motion and denied Penn National's motion, holding that Cost was an additional insured under Penn National's policy and thus Penn National had a duty to defend Cost. The Court reasoned that the facts in the Ramirez Amended Complaint, accepted as true, alleged that Flexicore negligently failed to provide adequate warnings and thus "raise[d] the possibility that Mr. Gonzalez's death was caused in whole or in part by Flexicore's acts or omissions." Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co., No. CV 16-1613, 2018 WL 3872155, at *7 (W.D. Pa. Aug. 15, 2018) (emphasis omitted). While the Ramirez Amended Complaint's headers labeled the claims against Flexicore as strict products liability, the Court found that the substance of the allegations also sounded in negligence. Id. at *8. As a result, it concluded that there was a possibility that the claims were covered.[4] Id. at *8-9.

Liberty Mutual then moved for summary judgment on Penn National's duty to indemnify, which the District Court also granted. The Court found that "there [were]

---

[4] The District Court determined that Penn National had a duty to defend Cost under both the Ongoing and Completed Operations endorsements.

5

multiple claims, multiple parties, multiple insurers, and a settlement . . . that preclude[d] a determination on the facts of th[e] case relative to liability and its apportionment." Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co., 499 F. Supp. 3d 130, 145 (W.D. Pa. 2020). The Court held that where the settlement "preclude[d] such . . . factual determinations," "the duty to indemnify follows the duty to defend." Id. at 139 (omissions in original) (quoting Pac. Indem. Co. v. Linn, 766 F.2d 754, 766 (3d Cir. 1985)).

Penn National appeals the orders denying it summary judgment and granting Liberty Mutual summary judgment.[5]

II[6]

We first consider whether Penn National had a duty to defend Cost under the policy it issued Flexicore and then turn to whether it had a duty to indemnify Cost. Both

---

[5] Penn National does not dispute the reasonableness of (1) the $191,431.74 defense costs Liberty Mutual incurred, (2) the $850,000 settlement, or (3) the $349,401.03 prejudgment interest award.

[6] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

"We review a district court's grant of summary judgment de novo," Tundo v. County of Passaic, 923 F.3d 283, 286 (3d. Cir. 2019), and we view the facts and make all reasonable inferences in the non-movant's favor, Hugh v. Butler Cnty. Fam. YMCA, 418 F.3d 265, 266-67 (3d Cir. 2005). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

6

issues require us to consider the insurance policy and the claims made against the insured.  See Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290-91 (Pa. 2007).

A

An insurer has a duty to defend its insured in any suit in which the complaint alleges claims that the insurance policy potentially covers.  Id.  To determine whether an insurer's duty to defend is triggered by a claim against its insured, we "compar[e] the four corners of the insurance contract [with] the four corners of the complaint."  Lupu v. Loan City, LLC, 903 F.3d 382, 389 (3d Cir. 2018) (quoting Am. & Foreign Inc. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010)).

When interpreting an insurance contract under Pennsylvania law, which the parties agree governs this dispute, we must ascertain and give effect to the parties' intent as manifested in the terms of the policy.  Baumhammers, 938 A.2d at 290.  Where the language is clear and unambiguous, we must follow it.  Minn. Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 861 (Pa. 2004).  However, where the contract language is ambiguous, we construe the provision in favor of the insured.  Id.  When reviewing the underlying complaint, we "view[] the allegations as true and liberally construe [them] in favor of the insured."  Ramara, Inc. v. Westfield Ins. Co., 814 F.3d 660, 673 (3d Cir. 2016) (quotation marks omitted).  If a single claim in a multiclaim lawsuit is potentially covered by the insurance policy, the insurer must defend all claims until "there is no possibility that the underlying plaintiff could recover on a covered claim."  Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); see also Erie Ins.

7

Exch. v. Claypoole, 673 A.2d 348, 355-56 (Pa. 1996) (similarly summarizing the duty to defend).

Penn National's duty to defend was triggered because Cost qualified as an additional insured under the policy's Completed Operations endorsement. As noted, that endorsement designates as an additional insured "[a]ny . . . organization(s) with whom [Flexicore] is required in a written contract . . . to name as an additional insured for the 'products-completed operations hazard', but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by '[Flexicore's] work.'" App. 314. Here: (1) the Subcontract Agreement named Cost as an additional insured; (2) the Ramirez Amended Complaint alleged that Gonzalez's bodily injury was caused, at least in part, by Flexicore's work; and (3) the policy's products-completed operations hazard covers such work. Specifically, the policy: (1) defines the "products-completed operations hazard" to include "all 'bodily injury' . . . occurring away from premises [Flexicore] own[s] or rent[s] . . . arising out of . . . 'your work,'" App. 333; (2) provides that Flexicore's work is deemed completed "[w]hen all of the work called for in [its] contract has been completed," App. 333; and (3) explains that "your work" includes "[t]he providing of or failure to provide warnings or instructions," App. 334. The Ramirez Amended Complaint alleged that Flexicore manufactured and delivered the concrete panels to the Grandview Project and that Gonzalez's bodily injury resulted from Flexicore's "work," i.e., its "failure to provide warnings." App. 334; see also App. 105 (Amended Complaint asserting that "[Flexicore] negligently failed to have proper warnings or instructions

8

concerning [the concrete panels'] use, and [the concrete panels were] negligently designed"). Because the allegations demonstrate that there is a possibility that the Penn National policy covers the claim, the District Court correctly held that Penn National had to defend Cost in the Ramirez action. See Ramara, 814 F.3d at 674 (concluding insurer had duty to defend "because . . . the factual allegations in the complaint . . . potentially triggers coverage").[7]

B

Unlike the duty to defend, the duty to indemnify requires a determination that the policy actually covered the claim at issue. See Am. States Ins. Co. v. State Auto Ins. Co., 721 A.2d 56, 64 (Pa. Super. Ct. 1998) ("[A] duty to indemnify requires an inquiry into whether there was actual coverage for the underlying claim."). As a result, an insurer is "entitled to an opportunity to introduce evidence" that goes beyond the four-corners of the underlying tort complaint to "prov[e] the applicability of [a] subject [policy] exclusion" in the coverage action. Regis Ins. Co. v. All American Rathskeller, Inc., 976 A.2d 1157, 1161 (Pa. Super. Ct. 2009). This rule, however, does not mean that insurers may present all factual issues associated with the tort case for resolution as part of the insurance coverage action. Rather, where the underlying tort case has been settled, the insurers may seek resolution of only the factual disputes that would not have been

---

[7] Because we conclude that Penn National had a duty to defend based on the Completed Operations endorsement, we need not address its obligations under the Ongoing Operations endorsement.

resolved had the underlying tort suit been tried. Thus, where the coverage suit raises factual disputes about coverage that would have also been addressed in the settled underlying litigation, such disputes cannot be resolved in the coverage action. In such a situation, Pennsylvania law provides that the duty to defend itself triggers the duty to indemnify. See Linn, 766 F.2d at 766 (explaining that the duty to indemnify may follow the duty to defend where "settlement ma[kes] it impossible to determine on what theories of liability, if any, the underlying claimants would have prevailed").

American States is instructive. There, the Pennsylvania Superior Court concluded that there was no automatic duty to indemnify following a settlement in a car accident lawsuit because "the settlement of the underlying tort claim [did] not ma[ke] it impossible to determine if the [insurer's] policy provided coverage." 721 A.2d at 64. The policy at issue required determining whether the vehicle involved in the accident fell within the policy's definition of a "temporary substitute auto." Id. "The issue of whether the vehicle being driven . . . at the time of the accident was a 'temporary substitute auto' under the terms of the [insurer's] policy [was] one that would not have been resolved in the tort litigation, even if it had gone to trial" because it was not relevant to the tort claims or any defenses. Id. As a result, the settlement did not preclude the court from deciding whether the policy covered the claim. Id.

Here, by contrast, the District Court properly concluded that because the Ramirez litigation involved multiple claims against multiple defendants, covered by multiple insurers, the settlement made it impossible to determine the precise basis of Cost's and

10

Flexicore's liability. <u>Liberty Mut.</u>, 499 F. Supp. 3d at 141-46. That is, determining actual coverage here would require a court to decide whether Flexicore was liable for its "work," such as its "failure to provide warnings," App. 334 (Penn National policy), or liable under a different negligence or products liability theory not covered by the policy. Because such factual disputes cannot be decided in this multiparty, multiclaim case without factfinding in the underlying <u>Ramirez</u> litigation, Pennsylvania law requires that Penn National's duty to indemnify follows its duty to defend Cost. <u>See</u> <u>Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.</u>, 939 F.3d 243, 250 n.3 (3d Cir. 2019) (reiterating <u>Linn</u>'s holding where there was "little to no fact-finding from the Underlying Action on which we could base a nuanced coverage determination because the parties settled that case before it went to trial" and rejecting the plaintiff's coverage argument which "would effectively force . . . the [i]nsurers to try the Underlying Action before then trying the coverage case").[8]

## III

For these reasons, we will affirm the District Court's orders.

---

[8] Were this not the case, "an insurer would be able to settle a suit without an agreement with the insured, and attempt to avoid its duty to indemnify by claiming a jury would have found the claims in the underlying suit were not covered by the policy." <u>12th St. Gym, Inc. v. Gen. Star Indem. Co.</u>, 93 F.3d 1158, 1167 (3d Cir. 1996).